IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-02066-REB-BNB

ROBERT BLACKMAN,

Plaintiff,

v.

MR. TORRES, Correctional Officer,

Defendant.
_____

**ORDER**
_____

The plaintiff is incarcerated by the Federal Bureau of Prisons ("BOP") at the United States Prison, Administrative Maximum in Florence, Colorado ("ADX"). This is one of several cases that he has initiated in this court. At issue here are the plaintiff's motions, filed on December 10, 2011, and January 20, 2012, alleging that BOP personnel at ADX are interfering with his mail to and from the court [Docs. ## 17 and 27].

The plaintiff claims that between September 29, 2011, and January 23, 2012, he did not receive any mail from the court concerning this action. During that time, five orders or certificates were issued by the court and sent to the plaintiff, including:

       (1) Order [Doc. # 14, filed 10/28/2011];

       (2) Order Drawing Case [Doc. # 18, filed 12/13/2011];

       (3) Text Entry Order Reassigning Case [Doc. # 19, filed 12/14/2011];

       (4) Certificate of Service [Doc. # 20, filed 12/14/2011]; and

(5) Order of Reference to United States Magistrate Judge [Doc. # 21, filed 12/16/2011].

The plaintiff also claims that the BOP has interfered with his outgoing legal mail. He claims that he initiated two additional cases by mailing complaints to this court--one on October 18, 2011, and the second on October 25, 2011. The court docket reflects that only one additional action was commenced by the plaintiff in October 2011--Case No. 11-cv-02750, filed on October 21, 2011. The Complaint in Case 11-cv-02750 is signed by the plaintiff and dated "10-18-11." However, that case was dismissed without prejudice on December 8, 2011, when the plaintiff failed either to pay an initial partial filing fee or show cause why he could not pay that fee. *Order* [Doc. # 7]. The Order dismissing the case notes:

> Mr. Blackman has failed either to pay the initial partial filing fee within the time allowed, as designated in the November 1 Order or, in the alternative, to show cause why he has no assets and no means by which to pay the designated fee. Indeed, Mr. Blackman has not filed anything with the Court since November 1, 2011.

Id. at p. 2.

The court's docket does not reflect receipt of any complaint from the plaintiff dated or mailed on or about October 25, 2011.

I held an initial hearing on the plaintiff's motions concerning mail issues on May 10, 2012. I subsequently entered an order [Doc. #51] requiring the United States Attorney to send several documents to the plaintiff, stating:

> I am concerned by the plaintiff's allegations that correctional
> officers are interfering with his mail. My concern is not
> ameliorated by the [defendant's] Response [Doc. # 46], which does
> not dispute the plaintiff's factual allegations in any way, and
> argues instead that the plaintiff has failed to "demonstrate 'actual
> injury' or 'actual prejudice' to pending or contemplated litigation."
> Id. at p. 3. All parties should note that I will not tolerate any
> improper interference with the plaintiff's mail to or from the court.

On April 16, 2012, the defendant filed a motion to dismiss [Doc. #45]. I ordered the plaintiff to respond to the motion on or before May 16, 2012 [Doc. #48]. The plaintiff filed a motion for extension of time [Doc. #52], which was received by the court and granted [Doc. #56]. Despite the extension allowed, no response to the motion to dismiss was received. Subsequently, I issued a recommendation [Doc. #60] on December 17, 2012, that the motion to dismiss be granted in part and denied in part. The defendant filed objections to the recommendation on January 3, 2013 [Doc. #64].

On January 31, 2013, I held a Scheduling Conference. During that conference the plaintiff stated that he had received the order to respond to the motion to dismiss and the order granting an extension for his response. He stated that he attempted to mail his response on August 13, 2012, but he did not receive either a copy of my recommendation or the defendant's objections to the recommendation.[1] Consequently, I entered the following order [Doc. #66]:

> (1) On or before February 19, 2013, the United States Attorney
> shall investigate the mail system utilized at the United States
> Prison, Administrative Maximum in Florence, Colorado ("ADX"),
> and report whether the ADX maintains a log of mail received by
> the prison for inmates and the delivery of that mail to the inmate;
> and provide copies of any records which the ADX has concerning

---

[1] The plaintiff also stated that although he received the order setting the Scheduling Conference, he did not receive it with his regular mail. Instead, the order (without an envelope) was slid under his cell door several hours before the regular mail was distributed.

> receipt of the Recommendation of United States Magistrate Judge
> [Doc. # 60, filed 12/17/2012] and the Objection Re: Magistrate
> Judge's Recommendation [Doc. # 64, filed 1/2/2013] and their
> delivery to the plaintiff.
>
> (2) Within 24 hours of the Scheduling Conference, the United
> States Attorney shall mail to the plaintiff at his address of record
> copies of the Recommendation of United States Magistrate Judge
> [Doc. # 60, filed 12/17/2012] and the Objection Re: Magistrate
> Judge's Recommendation [Doc. # 64, filed 1/2/2013].

Because the plaintiff claimed that he did not receive my recommendation and, consequently, had not filed a timely objection to it, I suggested during the Scheduling Conference that the plaintiff could file a motion to submit his objections out of time. No such motion was received.

On February 15, 2013, the defendant filed a report describing the ADX mail system, stating:

> Regarding the first issue – whether the ADX maintains a mail log
> for mail delivered to inmates – in general, there are two types of
> inmate mail: general correspondence and Special Mail. *See* 28
> C.F.R. § 540.2 (defining general correspondence and special mail);
> *see also* Exhibit A-1 at ¶ 7 (Declaration of Attorney Advisor
> Kaitlin Turner). Incoming general correspondence received by an
> inmate is not logged at the ADX. *See* Ex. A-1 at ¶ 5. Unlike
> general correspondence, incoming Special Mail received by an
> inmate is documented on a log that contains the inmate's name,
> register number, housing unit, sender's name, city, state, the date
> and time the mail was received at the institution, and the initial's
> of the staff member who issued the mail to the inmate. *See id*. at ¶
> 6 & Att. 1 to Ex. A-1. Because staff members are not permitted to
> read the Special Mail, *see* 28 C.F.R. § 540.18(a), the log does not
> identify the document contained in the Special Mail.
>
> Regarding the second issue – whether the ADX has any record of
> receiving Docket Nos. 60 and 64 and delivering those documents
> to Plaintiff – the ADX does not have a record of receiving those
> specific documents. *See* Ex. A-1 at ¶¶ 9-10. However, because
> neither the Court nor the United States Attorney's Office typically

> employs Special Mail to mail court filings to inmates, Plaintiff's
> receipt of those documents would not be expected to appear on any
> log maintained in the ordinary course of business by the Bureau of
> Prisons. Here, Docket No. 60 (the Recommendation), was issued
> on December 17, 2012, and Docket No. 64 (Defendant's
> Objections), was filed on January 2, 2013. Between December 1,
> 2012, and February 13, 2013, Plaintiff received two pieces of
> Special Mail, one on February 5, 2013, from the U.S. Attorney's
> Office in Denver, and one on February 13, 2013, from the Court in
> Denver. *See* Ex. A-1 at ¶ 9. Given the timing of these mailings, it
> is unlikely that they contained Docket No. 60 or Docket No. 64.
>
> But even if Plaintiff did not receive these two pieces of mail at the
> time they were originally filed, any prejudice to Plaintiff has been
> cured. In accordance with this Court's January 31, 2013, Order
> (Doc. 66), counsel for Defendant mailed, by certified mail, a copy
> of Docket No. 60 and Docket No. 64 to Plaintiff, which were
> received on February 5, 2013. Moreover, undersigned counsel
> would not oppose a reasonable extension of time until March 1,
> 2013, for Plaintiff to file a response to Defendant's Objections to
> the Recommendation.

*Status Report Regarding Inmate Mail* [Doc. #72].

On March 11, 2013, the district judge entered an order granting in part and denying in part the defendant's motion to dismiss [Doc. #75].

On June 17, 2013, the plaintiff filed a motion [Doc. #82] requesting a hearing on "prison staff legal mail improprieties." The motion reported that on August 13, 2012, the plaintiff submitted his response to the defendant's motion to dismiss to an ADX staff member--"Mr. Foster - counselor"--for mailing. He further stated that on February 27, 2013, he mailed objections to a recommendation in a separate case--Civil Action No. 12-cv-01191-REB-BNB-- and that on February 28, 2013, he mailed objections to the recommendation issued in this case. The court did not receive the response to the motion to dismiss or the objections.

On August 27, 2013, I conducted an evidentiary hearing on all of the plaintiff's allegations regarding interference with his mail.[2] Based on the testimony, evidence presented, and record as a whole, I find the following facts regarding the processing of mail at ADX:

1. There are two primary policies (with supplements) that govern mail handling procedures at ADX: (1) Program Statement 5800.16, Mail Management Manual; and (2) Program Statement 5265.14, Correspondence. *Transcript of Proceeding* [Doc. #118] ("Tr."), 8:15-12:21 and Exhs. D1-D4.

2. The BOP categorizes the mail to and from inmates as either general mail or special/legal mail.[3] *Tr.*, 13:2-5. The incoming mail is picked up from the Florence post office in the morning and sorted in the ADX mail room for identification as either general mail or special mail. Id. at 14:14-22; 16:13-15; 48:1-4.

3. Special mail includes mail sent to and from federal and state courts; attorneys; and federal, state, and local law enforcement agencies. Id. at 13:7-16; Ex. D3, p. 4, § 540.2(c). For incoming mail from these sources to be processed under the special mail procedures, it must clearly state "to be opened in the presence of the inmate only."[4] *Tr.,* 13:19-21; 30:1-17; Exh. D3, p. 4, § 540.2(c); Exh. D2, § IIIL.

---

[2]The plaintiff appeared in person over the defendant's objections [Docs. ##100 and 108].

[3]The terms "special mail" and "legal mail" are used interchangeably at ADX. *Tr.*, 13:22-25.

[4]Mail to an inmate from the Clerk of this Court typically does not contain the required directive to open in front of the inmate. Therefore, it is handled by the BOP as general mail. However, mail coming directly from a judge's chambers is automatically treated as special mail regardless of whether it states "to be opened in the presence of the inmate only." *Tr.*, 13:19-21; 48:21-25; Exh. D2, § IIIL2.

4. The Unit Counselor or a Unit Team Member picks up incoming special mail from the ADX mail room and delivers it to the inmate. The incoming special mail is to be opened in the presence of the inmate, checked for contraband, given to the inmate, and logged into the mail log. *Tr.*, 16:11-17:13; 49:5-7; 67:11-63:1. Special mail should be delivered to the inmate within 24 hours after it is received at ADX. Id. at 17:22-18:1.

5. Outgoing special mail is to be picked up, sealed, from the inmate by the Unit Counselor or a Unit Team Member by 7:30 a.m.; initialed and dated; and taken to the ADX mail room for mailing within 24 hours. Id. at 22:18-23:1.

6. Inmates may send outgoing mail to the Clerk's Office marked as legal mail, and it will be treated as outgoing special mail. Id. at 30:18-32:; 44:7-45:2; 49:23-50:12; 51:18-24; 63:12-66:14; 66:23-67:7; Ex. D3, p. 3, § 540.2(c). Inmates should be advised if the mail does not meet the criteria for outgoing special mail and provided an opportunity to correct any deficiencies. *Tr.*, 22:18-23:1; 23:15-24:1; 25:16-21.

7. In order to maintain the consistency of the mail process and to insure that the 24 hour time frame is met, outgoing special mail is to be picked up only by a Unit Counselor or Unit Team Member, not a Correctional Officer. Id. at 24:2-17.

8. Outgoing special mail is not logged unless it requires a special type of tracking such as certified or registered mail. Id. at 25:22-26:4; 50:7-8.

9. General mail consists of incoming or outgoing mail other than special mail, including mail from family, friends, and the media. Id. at 14:2-5.

10. Incoming and outgoing general mail is not logged unless it requires a special type of tracking such as certified or registered mail. Id. at 15:14-18; 23:5-9; 48:15-18.

11. The ADX requires 100% monitoring of general correspondence. Id. at 14:22-23; 56:2-4. Special Investigative Services ("SIS") officials pick up the incoming general mail from the ADX mail room in the morning and take it to their area. The general mail is screened and checked for contraband; re-sealed; and taken back to the ADX mail room.[5] Id. at 14:23-15:4.

12. Incoming general mail is delivered to the inmates in the evening by Correctional Officers. Id. at 14:10-16:10; 18:16-22; 55:16-58:2.

13. Outgoing general mail is picked up by a Correctional Officer in the evenings and taken to the ADX mail room unsealed. SIS staff take the general mail from the ADX mail room to their area for screening. If there are no concerns, the mail is sealed and taken back to the ADX mail room for mailing. Id. at 18:2-19:12; 49:11-19.

14. Normally, the inmates slide outgoing general mail under their cell doors for pick up by a Correctional Officer. Id. at 19:13-21.

15. Mail left outside cell doors for pick up is vulnerable to fishing by other inmates before it is picked up. "Fishing" is the term used to describe the practice by which inmates grab the mail of other inmates with a device fashioned from a sheet (or other material) with a weight or hook on the end.[6] Id. at 19:17-21:20. In addition, mail may be picked up by other inmates who are cleaning the unit as a part of their work assignments. Id. at 21:24-22:8; 24:18-25:2.

---

[5]Associate Warden Kuta testified that the mail is checked for contraband by SIS officials. Id. at 14:23-15:3. Rick Martinez, the full-time mail processor at ADX, testified that he opens all of the general correspondence to search for contraband, then forwards the general mail to the SIS Department. Id. at 45:22-46:22; 48:12-14.

[6]Fishing is a common behavior at ADX and may be used to grab other items, including food. Id. at 20:5-12; 90:3-23. The plaintiff's former Unit Counselor testified that fishing "definitely" occurred on the plaintiff's unit. Id. at 72:23-73:1. The plaintiff also testified regarding the methods and extent of fishing on his unit. Id. at 109:11-24.

It is disputed whether counselors make rounds to pick up the inmates' special mail on a daily basis. Mr. Foster, the plaintiff's Unit Counselor until June 2013, testified that his typical inmate caseload involves approximately 165 inmates. Id. at 66:15-22. Mr. Foster's practice during the relevant time period was to go to the cell of every inmate for whom he was responsible between the hours of 6:30 and 8:30 a.m., pick up their special mail, and discuss any problems. Id. at 63:12-64:10; 66:12-14; 68:13-22; 73:18-74:1. The plaintiff, however, testified that inmates sometimes go several days without seeing a Unit Team Member and that their mail may lie on the floor outside the sally port[7] during that time. Id. at 95:20-25.

It is undisputed that all inmate mail (general and special) ordinarily must be pushed under the interior cell door, through the sally port, and under the exterior door onto the unit hallway to be picked up by a Correctional Officer, Unit Manager, or Unit Team Member. Indeed, Mr. Foster admitted that he usually retrieves the special mail from the ground. Id. at 64:17; 66:2-4. The plaintiff testified that the inmates are *required* to slide the mail under their interior cell door, through the sally port, and under the exterior door because prison officials will not enter the sally port to collect the mail.[8] Mail left in the unit hallway is vulnerable to being fished.

The plaintiff testified that the Unit Managers, including Mr. Foster, normally do not interact with inmates when picking up their special mail. Id. at 88:9-89:20; 92:23-93:24; 1095-10. The plaintiff also testified that prison officials may kick special mail from the unit hallway

---

[7]The sally port is a small space between the inmate's cell door and the door to the unit hallway. Id. at 20:16-21; 20:25-21:3; 88:16-25.

[8]On one occasion, Mr. Foster asked the plaintiff for his mail; the plaintiff told Mr. Foster that the mail would not fit under the door because it was too thick; and Mr. Foster replied that "if you can't get it up under the door, Blackman, I don't know what to say," and walked away. Id. at 92:23-93:24.

9

back into the sally port, id. at 96:16-97:11, and that Correctional Officers (rather than the required Unit Counselor or Unit Team Member) have picked up his special mail. Id. at 97:11-99:15. The plaintiff stated that he has filed grievances on these issues, without relief.[9] Id. at 96:2-10.

      The plaintiff testified that he saw Mr. Foster pick up his mail on February 28, 2013, and that they engaged in a conversation. Id. at 76:11-77:77:20. Mr. Foster admits that he was working February 28, 2013, when the plaintiff claims to have mailed his objections to my recommendation regarding the defendant's motion to dismiss, id. at 71:1517, but that he does not recall whether the plaintiff gave him any mail. Id. at 72:1-3. The plaintiff indicated that the mail was marked as special mail and that he always marks his legal mail as special mail. Id. at 102:21-25. The plaintiff also testified that he gave Mr. Foster his legal mail on August 13, 2012. Id. at 79:22-80:12. Mr. Foster stated that he was working on August 13, 2012, when the plaintiff claims to have mailed his response to the defendant's motion to dismiss, id. at 70:11-17, but that he does not recall whether the plaintiff gave him mail on that day. Id. at 71:2-4. Mr. Foster stated that if the plaintiff had special mail on either of those days, he would have processed it. Id. at 71:7-9; 72:4-6.

      The plaintiff said that he does not know what happened to his mail after he gave it to Mr. Foster. Id. at 91:6-13. He stated that he sent both pieces of mail as certified, but he never received back the certified mailing slips. Id. at 80:17-82:8. Mr. Foster acknowledged that the plaintiff normally marks his mail to the Clerk of the Court as legal/special mail, id. at 72:15-18;

---

[9]The plaintiff testified that grievances are thwarted at ADX. Id. at 100:2-102:11. Although the plaintiff's allegations regarding the grievance process are serious, this order focuses on matters concerning the plaintiff's mail.

the plaintiff generally had outgoing special mail several times a week; id. at 69:19-23; and the plaintiff's practice is to send his legal mail certified. Mr. Foster stated that he usually picked up the mail and would knock on the plaintiff's door and wave the mail to let the plaintiff know that it had been picked up. Id. at 69:24-70:4. Mr Foster also stated that he delivers the certified mail to the mail room and does not do anything special with it. Id, at 85:25-86:11.

I am persuaded by the record and the evidence presented that there are irregularities in the way the plaintiff's mail is being handled by ADX officials. As a result of the irregularities, the plaintiff was denied the opportunity to respond to the defendant's motion to dismiss and to file objections to my recommendation.

Shon Kuta, an Associate Warden at the Federal Correctional Complex ("FCC") at Florence, oversees the mail department at the ADX. Id, at 6:18-7:13; 8:8-12. Mr. Kuta testified that he recently communicated with the staff involved in handling mail, and he identified an issue that he has addressed. Specifically, Mr. Kuta stated that Unit Counselors were taking special mail directly to the SIS Department for screening rather than taking it to the mail room. Id. at 26:19-27:19. Mr. Kuta is conducting training sessions with the staff to review mail procedures; reiterate the importance of complying with the applicable time frames; and emphasize that Correctional Officers are not to handle special mail. Id. at 27:20-29:3. He is also advising inmates to give special mail only to Unit Team Members. Id. at 29:4-8. However, Mr. Kuta has not addressed the issue of inmates being required to leave their mail on the floor on the unit hallway for pick up, nor has he meaningfully addressed the cause of the disappearance of the plaintiff's legal mail on August 13, 2012, and February 28, 2013.

Practices that unreasonably burden a prisoner's ability reliably to send and receive court filings may violate the constitutional right of access to the courts. See Frazier v. Flores, 2013 WL 5541391 *1 (10th Cir. Oct. 9, 2013)(unpublished). In addition, courts possess implied powers to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotations omitted) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962)). This inherent power includes the authority to fashion appropriate sanctions. Id.

Here, the plaintiff was denied a reliable mail system through which to file his response to the motion to dismiss and his objections to my recommendation on the motion to dismiss. Consequently, several of the plaintiff's claims were dismissed without the benefit of the plaintiff's briefing. In addition, attempting to sort out the problems relating to the plaintiff's legal mail has substantially burdened judicial resources.

IT IS ORDERED:

(1) On or before **October 29, 2013**, if at all, the plaintiff shall file a Motion to Reconsider the District Judge's Order Concerning Recommendation of United States Magistrate Judge [Doc. #75]. The motion shall refer to this order. The plaintiff shall include in the motion his response to the defendant's motion to dismiss [Doc. #45] and his objections to my recommendation [Doc. #60] on the defendant's motion to dismiss.

(2) On or before **October 29, 2013**, the warden at the United States Prison, Administrative Maximum in Florence, Colorado, or his designee, shall file a proposed remedial plan which addresses all mail processing issues identified in this order.

Dated October 15, 2013.

                                              BY THE COURT:

                                              _s/ Boyd N. Boland_
                                              United States Magistrate Judge